UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY LYNN PRICE, | No. 2:15-cv-1287 DB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's step two finding, treatment of the medical opinion evidence, and treatment of plaintiff's subjective testimony constituted error. For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 8 & 9.)

PROCEDURAL BACKGROUND

On May 10, 2012, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on June 1, 2008. (Transcript ("Tr.") at 31.) Plaintiff's application was denied initially, (id. at 104-07), and upon reconsideration. (Id. at 110-14.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on July 15, 2013. (Id. at 46-78.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 46-48.) In a decision issued on December 2, 2013, the ALJ found that plaintiff was not disabled. (Id. at 41.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic pain syndrome and history of right non-dominant shoulder arthroscopic surgery (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is limited to occasional overhead reaching with the right upper extremity.
>
> 6. The claimant is capable of performing past relevant work as a customer service representative and home health aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of this decision (20 CFR 404.1520(f)).

(Id. at 33-40.)

////

On April 22, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's December 2, 2013 decision. (Id. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 16, 2015. (ECF No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

////

3

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error; and (3) the ALJ's treatment of plaintiff's subjective testimony constituted error. (Pl.'s MSJ (ECF No. 15) at 13-33.[2])

**I.  Step Two Error**

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's carpal tunnel syndrome and mental impairments of anxiety disorder and ADHD were not severe impairments. (Pl.'s MSJ (ECF No. 15) at 14-21.)

    a)    Carpal Tunnel Syndrome

The ALJ found plaintiff's carpal tunnel syndrome "non-severe." (Tr. at 34.) In this regard, the ALJ stated:

> Dr. Martin reported no obvious limitations for gross hand manipulations. During the physical examination, she had 5/5 grip strength bilaterally. Moreover, EMG studies in the record were inconclusive, negative, or mild. The physical examination showed no atrophy or dystrophic changes in the bilateral upper extremity. Kenten Wang, D.O., reported that the claimant's clinical picture was atypical of carpal tunnel syndrome.

(Id.)

However, a November 9, 2007 examination revealed "positive Phalen and Tinel sign on both sides," and plaintiff was diagnosed with "CARPAL TUNNEL SYNDROME" ("CTS").[3] (Id. at 269.) An October 13, 2008 examination report stated that "[e]lectrical studies demonstrated that there was moderate carpal tunnel syndrome bilaterally." (Id. at 250.) The examination revealed "positive Tinel's signs for the left median and ulnar nerve at the wrist," "positive Tinel's sign for both median nerves at the wrist," and "Phalen's maneuver reproduces complaints of numbness in both hands." (Id. at 252.) The doctor's diagnostic impressions included "Abnormal Electrical studies consistent with CTS." (Id.) A July 17, 2009 examination revealed that "Tinel's test causes extreme sensitivity at the wrist bilaterally." (Id. at 239.) Impressions included "Bilateral carpal tunnel syndrome." (Id.)

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. Here, given the evidence noted above, the court cannot say that the ALJ's conclusion that plaintiff's carpal tunnel syndrome was non-severe was clearly established by medical evidence. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test

---

[3] A Phalen's test is an orthopedic test used to diagnose CTS. Positive signs of a Phalen's test include upon compression, complaints of pain, tingling, or numbness in the hands. http://www.physio-pedia.com/Phalen's_Test. A Tinel's test is an orthopedic test used to detect irritated nerves. Positive signs of a Tinel's test is upon light tapping over a nerve the patient complains of a tingling sensation. http://www.physio-pedia.com/Tinel%E2%80%99s_Test.

1 │ results, Ukolov failed to meet his burden of establishing disability.").

    b)    Mental Impairments

If the ALJ determines that a claimant has a medically determinable mental impairment, the ALJ then rates the degree of the claimant's functional limitations in four areas, known as the "Paragraph B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(b)-(c); see also Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. In the first three areas, the ALJ rates the limitations as either none, mild, moderate, marked, or extreme. The fourth functional area, episodes of decompensation, is rated on a four point scale of none, one or two, three, and four or more. 20 C.F.R. 404.1520a(c)(3) and (4).

Where the claimant's degree of limitation is rated as "none" or "mild," the ALJ will generally find the impairment "'not severe', unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone [i]s sufficiently severe." Smolen, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

Here, the ALJ found that plaintiff's medically determinable mental impairment was non-severe. (Tr. at 34.) In this regard, the ALJ found that plaintiff experienced no more than mild limitations in the first three areas of functioning. (Id.) The ALJ also found that plaintiff had experienced no episodes of decompensation of an extended duration. (Id.)

However, on June 11, 2013, Dr. Mark Henigan, plaintiff's treating psychiatrist, opined that plaintiff had a current GAF of 45, and that plaintiff's highest GAF for the past year was 45.[4]

---

[4] A Global Assessment of Functioning or "GAF" score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). However, "GAF scores are typically assessed in controlled,

(Id. at 526.) Moreover, Dr. Henigan also opined that plaintiff was unable to meet competitive standards with respect to the ability to maintain attention for two hours, maintain regular attendance, perform at a consistent pace, and respond appropriately to changes in a routine work setting. (Id. at 528.) That opinion is consistent with the opinion of Dr. Kamyar Farhangfar, a treating physician, who opined on June 5, 2013, that plaintiff was incapable of tolerating "even 'low stress' jobs." (Id. at 521.)

It was also Dr. Henigan's opinion that plaintiff's functional limitations with respect to her daily activities were moderately limited, while she was markedly limited in maintaining social functioning and in maintaining concentration, persistence or pace. (Id. at 530.) Dr. Henigan also opined that plaintiff had experienced four or more episodes of decompensation within the last 12 months. (Id.)

In light of this evidence, the court cannot say that the ALJ's conclusion that plaintiff's mental impairments were non-severe was clearly established by medical evidence. Accordingly, the court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's carpal tunnel syndrome and mental impairments of anxiety disorder and ADHD were not severe impairments.[5]

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of two treating physicians and one examining physician. (Pl.'s MSJ (ECF No. 15) at 21-27.) The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to

---

clinical settings that may differ from work environments in important respects." Id. A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., friendlessness or inability to maintain employment). See Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. 2000).
[5] In light of the ALJ's other errors, addressed below, the court need not consider whether the ALJ's step two error was harmless. See generally Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the ALJ specifically discussed plaintiff's bursitis and its effects when identifying the basis for limitations in plaintiff's RFC).

the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

      a)     Dr. Mark Henigan

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Henigan, plaintiff's treating psychiatrist.[6] (Pl.'s MSJ (ECF No. 15) at 21-25.) In this regard, on June 11, 2013, Dr. Henigan provided his opinion by completing a Mental Impairment Questionnaire. (Tr. at 526-31.) The ALJ's decision discussed Dr. Henigan's opinion, noting that Dr. Henigan

> . . .opined that the claimant's ADHD, anxiety, and pain with a GAF score of 45 precluded her from meeting competitive standards in areas like attention, regular attendance, and responding to changes. Dr. Henigan also opined that the claimant had marked limitations in social functioning and concentration.

(Id. at 39.)

////

---

[6] The opinion of a psychiatrist is generally entitled to greater weight than the opinion of a non-specialist. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a specialist about medical issues related to his or her area of specialty'" should be given greater weight).

9

1    The ALJ, however, afforded Dr. Henigan's opinion "little weight." (Id.) In this regard,
2    the ALJ asserted that Dr. Henigan's opinion was "inconsistent with . . . progress notes" because
3    "in November 2010 he reported that the claimant's mental condition was stable and not very
4    limited." (Id.) Although Dr. Henigan's handwriting is somewhat difficult to read, the progress
5    note cited by the ALJ in support of this finding, however, appears to read that plaintiff was
6    "stable but far from a functional baseline." (Id. at 556.)

    Moreover,

> [c]ycles of improvement and debilitating symptoms are a common
> occurrence, and in such circumstances it is error for an ALJ to pick
> out a few isolated instances of improvement over a period of
> months or years and to treat them as a basis for concluding a
> claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

The ALJ went on to state that Dr. Henigan's progress notes were "primarily medication management" that did not support his "extreme limitations . . . ." (Tr. at 39.) However, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations." Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007). In this regard, the progress notes referred to by the ALJ are titled "Clinical Psychopharmacology Medication Management Progress Notes." (Tr. at 556.) It is expected that such notes would concern primarily medication management. Moreover, "[i]t has often been recognized that mental disorders cannot be ascertained and verified to the same degree as physical impairments." Hartman v. Bowen, 636 F. Supp. 129, 132 (N.D. Cal. 1986).

The ALJ also found that plaintiff's "routine, conservative treatment with Dr. Henigan contradicts the limitations set forth in the opinion." (Tr. at 39.) The Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject
> mental complaints both because mental illness is notoriously
> underreported and because "it is a questionable practice to chastise

one with a mental impairment for the exercise of poor judgment in
seeking rehabilitation."

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). Nonetheless, Dr. Henigan was plaintiff's treating psychiatrist. It is entirely unclear what additional treatment plaintiff could have sought for her mental impairments.

The ALJ went on to criticize Dr. Henigan's opinion by noting that it was "inconsistent with the opinion of another examining mental health specialist, Dr. Torrez, who found no functional limitations." (Tr. at 39.) However, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive . . . ."[7] Garrison, 759 F.3d at 1012-13.

Finally, the ALJ found that Dr. Henigan appeared "to be acting as an advocate for the claimant rather than providing an accurate assessment based on objective evidence." (Tr. at 39.) The ALJ provides no evidence to support this finding. "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." Lester, 81 F.3d at 832.

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate reason supported by substantial evidence in the record for rejecting Dr. Henigan's opinion.

b) Dr. Kamyar Farhangfar

Plaintiff argues that the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. Kamyar Farhangfar. (Pl.'s MSJ (ECF No. 15) at 25-27.) On June 5, 2013, Dr. Farhangfar completed a Physical Residual Functional Capacity Questionnaire. (Tr. at 520-24.) The ALJ's decision recounted Dr. Farhangfar's opinion, stating:

> The medical source statement opined that because of back, right shoulder, and carpal tunnel pain, the claimant was limited to

---

[7] Moreover, it is not accurate to say that Dr. Torrez found no functional limitations. In this regard, Dr. Torrez opined that plaintiff's "symptom severity is considered to be within the mild range and is currently treated." (Tr. at 505.) Dr. Torrez also opined that plaintiff's ability to accept instructions and respond appropriately, and to compete a normal workday and workweek, were only "fair." (Id. at 506.)

> performing a less than sedentary level of exertion due to inability to sit, stand, or walk for 2 hours in an 8-hour workday in addition to other extreme restrictions like missing work more than four days per month.

(Tr. at 39.)

The ALJ, however, afforded Dr. Farhangfar's opinion little weight. (Id.) In support of this determination, the ALJ found that "the routine, conservative medical treatment the claimant received for her physical conditions contradicts Dr. Farhangfar's opinion." (Id.) An ALJ may discount a physician's opinion if it is inconsistent with the plaintiff's conservative treatment. See, e.g., Hanes v. Colvin, 651 Fed. Appx. 703, 705 (9th Cir. 2016) ("the ALJ reasonably relied on his findings regarding Hanes's daily activities, her conservative treatment, and her positive response to that treatment to conclude that the assessments of Dr. Hawkins and Dr. Pena were inconsistent with the objective evidence in the record"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ reasonably discounted a treating physician's opinion where conservative treatment was inconsistent with symptoms one would expect if claimant was disabled).

Here, the record reflects that Dr. Farhangfar's treatment consisted of "exercises," and "continuing conservative management with anti-inflammatories, activity modification, and use of ice and heat." (Tr. at 485, 487.) Moreover, at the July 15, 2013, hearing plaintiff testified that she was not being treated by any doctor "on a regular basis." (Id. at 59.)

Accordingly, the court finds that the ALJ provided a clear and convincing reason for rejecting Dr. Farhangfar's opinion.

        c)     Dr. J. Martin

On December 15, 2012, plaintiff was examined by Dr. J. Martin. (Id. at 496-97.) The ALJ afforded "significant weight to Dr. Martin's . . . opining that the claimant has no sitting restrictions and she can stand/walk up to 6 hours during an 8-hour workday." (Id. at 38.) The ALJ, however, assigned "little weight" to Dr. Martin's opinion that plaintiff was "limited to lifting/carrying 10 pounds." (Id.) The ALJ asserted that there was "no medical support" for that limitation and that Dr. Martin "based this assessment on the claimant's allegations of carpal tunnel symptoms." (Id. at 39.)

12

In this regard, the ALJ noted that Dr. Martin's opinion was "inconsistent with the unremarkable findings" concerning plaintiff's hands and wrists and Dr. Martin's "own finding of no strength deficits in upper extremities, grip strength 5/5 bilaterally, and no limitations in gross hand manipulations." (Id.) However, Dr. Martin's opinion stated that it was based on his "consistent objective findings" from the examination. (Id. at 497.) Those objective findings included limited abduction, adduction, and forward elevation in plaintiff's shoulders, and limited dorsiflexion and palmar flexion in plaintiff's wrists. (Id. at 498.)

Dr. Martin also opined that "restriction from repetitive hand movements seem[ed] reasonable." (Id. at 497.) That limitation, however, was not discussed by the ALJ. "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."). As noted above, an examining physician's uncontradicted opinion may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. Here, no reason was given for rejecting Dr. Martin's opinion with respect to repetitive hand movements.

Accordingly, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Martin's opinion. Therefore, plaintiff is entitled to summary judgment with respect to her claim that the ALJ's treatment of the opinions of Dr. Henigan and Dr. Martin constituted error. Plaintiff is not entitled to summary judgment on her claim that the ALJ's treatment of Dr. Farhangfar's opinion constituted error.

### III. Subjective Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error. (Pl.'s MSJ (ECF No. 15) at 27-33.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. at

36.) One of the reasons given by the ALJ for discrediting plaintiff's testimony was that plaintiff had previously exaggerated her symptoms. (Id. at 38.)

"Inconsistencies and a tendency to exaggerate provide a valid basis for discrediting the testimony of a claimant." Bickell v. Astrue, 343 Fed. Appx. 275, 277 (9th Cir. 2009); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the ALJ properly discredited the claimant's testimony based on the claimant's tendency to exaggerate, in light of the doctor's "observation that she was uncooperative during cognitive testing but was 'much better' when giving reasons for being unable to work"). Moreover, the ALJ's finding here is supported by substantial evidence in the record.

In this regard, after a March 21, 2008, examination by Dr. Vicki Wheelock, Dr. Wheelock reported:

> The patient answered all questions very slowly. She was fully oriented to time and to space. When I asked her what building we were in, she said "right here." When I asked her the location of the building, she knew that she was on J Street and she knew she was in a doctor's office. When I probed further, she could identify that we were part of the UC Davis Medical Group. It was my impression that the patient was not giving a full effort in answering these questions.

(Tr. at 263.)

On December 21, 2012, plaintiff was examined by Dr. Silvia Torrez. (Id. at 500-06.) Thereafter, Dr. Torrez recounted:

> The claimant appeared to be presenting herself in a manner that would suggest she was more impaired than she was. She was deliberately delaying her answers and initially indicated she did not know her age, date of birth, social security number; however, when the interviewer pointed out that it was unusual for someone to forget basic information about oneself she immediately was able to recall the information she initially reported she did not recall. She appeared to be deliberately vague and when she was asked for clarification she immediately answered the question she did this for most of the interview.

(Id. at 503.)

Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence in the record for discrediting plaintiff's testimony.

15

# CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot find that further administrative proceedings would serve no useful purpose. For example, a Vocational Expert testified at the July 15, 2013 administrative hearing. According to the testimony of the Vocational Expert, Dr. Henigan's opinion establishes that plaintiff cannot engage in competitive employment. (Tr. at 75-76.) Dr. Henigan's opinion, however, is dated June 11, 2013, and states that plaintiff's symptoms have lasted or can "be expected to last at least twelve months." (Id. at 531.) Plaintiff, however, is alleging disability beginning June 1, 2008. (Id. at 31.) In this regard, it is not clear when plaintiff became disabled.

////
////
////
////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 20) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: August 29, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\price1287.ord